ORIGINAL

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION

KIRK TANNER and DEANNA TANNER,
individually and as natural guardians,
parents and Next Friend of BREANNE
TANNER, CHRISTOPHER TANNER, and
KYLER TANNER,

        Plaintiffs,

vs.

Case No: _____
Hon. _____

LENAWEE COUNTY SHERIFF'S
DEPARTMENT, a division of the COUNTY
of LENAWEE, a Michigan governmental
agency, COUNTY OF LENAWEE, a
governmental agency, NATHAN ANDREW
ADAMS, CHRISTOPHER JOHN HUNT,
CLETUS B. SMITH and LARRY
RICHARDSON, jointly and severally,

        Defendants.

FILED
MAR 27 3 54 PM
U.S. DISTRICT COURT

MAZUR MORGAN MEYERS
& KITTEL, P.L.L.C.
Courtney E. Morgan, Jr. (P29137)
Attorney for Plaintiff
660 Woodward, Suite 1490
Detroit, MI 48226
(313) 961-0130

CYNTHIA L. REACH (P55903)
Reach, Ranney & Carpenter, P.C.
Attorneys for Defendants
121 West Washington Street, Suite 400
Ann Arbor, MI 48104
(734) 994-1400 / (734) 994-6615 fax

Reach, Ranney
& Carpenter, P.C.
The Earle Building–Suite 400
121 West Washington Street
Ann Arbor, Michigan 48104

Tel: (734) 994-1400
Fax: (734) 994-6615

### NOTICE OF REMOVAL

To:    The United States District Court for the Eastern District of Michigan,
Southern Division

Defendants, COUNTY OF LENAWEE, LENAWEE COUNTY SHERIFF'S

DEPARTMENT, NATHAN ADAMS, CHRISTOPHER HUNT, CLETUS SMITH, and

LARRY RICHARDSON, by their attorneys, REACH, RANNEY & CARPENTER, P.C.,

pursuant to 28 U.S.C. § 1441 and 1446 hereby remove this civil action from the Lenawee

1

County Circuit Court to the United States District Court for the Eastern District of Michigan, Southern Division.

This removal is based on the following grounds:

1.    The above entitled action was commenced in the Lenawee County Circuit Court on or about September 13, 2002. It was entitled:

> KIRK TANNER and DEANNA ANNER, individually and as natural guardians, parents and Next Friend of REANNE TANNER, CHRISTOPHER TANNER, and KYLER TANNER,
>
>                  Plaintiffs,
>
> vs.
>
> LENAWEE COUNTY SHERIFF'S DEPARTMENT, a division of the COUNTY of LENAWEE, a Michigan governmental agency, COUNTY OF LENAWEE, a governmental agency, NATHAN ANDREW ADAMS, CHRISTOPHER JOHN HUNT, CLETUS B. SMITH and LARRY RICHARDSON, jointly and severally,
>
>                  Defendants.

The case was given the case number 02-937-NO and assigned to Judge Timothy P. Pickard.

2.    The original Complaint was filed on or near September 13, 2002. A First Amended Complaint was filed on or near October 22, 2002. A Second Amended Complaint was filed on or near February 26, 2003, and was received by Defendants in the mail on February 28, 2003.

3.    Plaintiffs' Second Amended Complaint is the first Complaint alleging a federal claim, and providing this Court with jurisdiction. The Second Amended Complaint alleges a violation of the U.S. Constitution pursuant to 42 USC § 1983, of which this Court has original

Reach, Ranney
& Carpenter, P.C.
The Earle Building–Suite 400
121 West Washington Street
Ann Arbor, Michigan 48104

Tel: (734) 994-1400
Fax: (734) 994-6615

jurisdiction, making the entire acting removable pursuant to 28 USC § 1448 (c).  See attached pleadings, tab I.  The Second Amended Complaint also alleges pendant state claims.

4.      Defendants notify this Court that the filing of this Notice of Removal may be premature as it is based on Plaintiffs' Second Amended Complaint.  No order has been entered in the State court permitting the filing of the Second Amended Complaint.  However, Plaintiffs have filed a Motion for Entry of Order Nunc Pro Tunc in the State Circuit Court, requesting a retroactive order be entered permitting the filing of the Second Amended Complaint as of February 26, 2003.  In such event, since Defendants received the Second Amended Complaint on February 28, 2003, the 30-day time period to remove the action would run March 28, 2003, which is therefore, the reason this Notice of Removal has been filed at this particular time.

5.      A hearing in the State Circuit Court on Plaintiffs' Motion for Entry of Nunc Pro Tunc Order is scheduled for April 7, 2003, which would be after the 30-day time period to remove this action, should the Circuit Court enter a retroactive order.  Defendants did request, and Plaintiffs agreed, to adjourn the hearing for Plaintiffs' Motion for Entry of Nunc Pro Tunc Order to April 7, 2003 to accommodate Defendants' scheduling conflicts.  Defendants will apprise the Court of the outcome of the April 7th court hearing on Plaintiffs' Motion for Entry of Nunc Pro Tunc Order, in case this Court determines the outcome of the hearing is relevant to these proceedings.

6.      Defendants respectfully request this Notice of Removal be considered timely filed, or that it is recognized under the particular circumstances of this case that Defendants have not waived their right to timely remove this cause of action.

Reach, Ranney
& Carpenter, P.C.
The Earle Building–Suite 400
121 West Washington Street
Ann Arbor, Michigan 48104

Tel: (734) 994-1400
Fax: (734) 994-6615

3

7.     A copy of every pleading served upon Defendants by Plaintiffs in the Circuit Court case is attached to this pleading, and separately bound.  The index for those pleadings are as follows:

A.     Complaint

B.     Notice of Hearing for Motion for Summary Disposition

C.     Order Regarding Filing of Plaintiff's First Amended Complaint

D.     First Amended Complaint and Jury Demand

E.     Stipulated Order to Adjourn Pretrial Conference

F.     Stipulated Order to Adjourn Motion for Summary Disposition and Pretrial Conference

G.     Pre-Trial Statement of Plaintiff

H.     Plaintiff's Response in Opposition to Defendants' Motion for Summary Disposition

I.     Second Amended Complaint and Jury Demand

J.     Plaintiffs' Motion for Entry of Nunc Pro Tunc Order and Notice of Hearing

K.     Re-Notice of Hearing

L.     Stipulation and Order Adjourning Plaintiff's Motion for Entry of Nunc Pro Tunc Order

REACH, RANNEY & CARPENTER, P.C.

Dated: 3/27/03

By: _____
Cynthia L. Reach  (P55903)
Attorneys for Defendants
The Earle Building, Suite 400
121 West Washington Street
Ann Arbor, MI  48104
(313) 994-1400

Reach, Ranney
& Carpenter, P.C.
The Earle Building~Suite 400
121 West Washington Street
Ann Arbor, Michigan 48104

Tel: (734) 994-1400
Fax: (734) 994-6615

4

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF LENAWEE

KIRK TANNER and DEANNA TANNER
Individually, and as natural guardians,
parents and Next Friend of BREANNE
TANNER, CHRISTOPHER TANNER
And KYLER TANNER,

C.A. #02- *937* NO
HON.

HONORABLE
TIMOTHY P. PICKARD

                    Plaintiffs,

            vs.

LENAWEE COUNTY SHERIFF'S
DEPARTMENT, a division of the COUNTY of
LENAWEE, a Michigan governmental agency,
COUNTY OF LENAWEE, a governmental agency,
NATHAN ANDREW ADAMS, CHRISTOPHER
JOHN HUNT, CLETUS B. SMITH and
LARRY RICHARDSON, Jointly and
Severally,

                    Defendants.



_____/

Courtney E. Morgan, Jr. (P29137)
MAZUR MORGAN MEYERS &
  KITTEL, PLLC
Attorney for Plaintiffs
660 Woodward, Ste.1490
Detroit, MI 48226
(313) 961-0130

> There is now on file in this court a civil action between these parties
> or other parties arising out of the same transaction or
> occurrence as alleged in the complaint.  The action is
> pending  and is No.01-605-NZ.
> The action was assigned to Judge Timothy P. Pickard.

## COMPLAINT AND JURY DEMAND

Plaintiffs, KIRK TANNER and  DEANNA TANNER, Individually and as  natural

guardians and parents of BREANNE TANNER, CHRISTOPHER  TANNER  and  KYLER

TANNER, through their attorneys, MAZUR MORGAN MEYERS & KITTEL, PLLC, and COURTNEY E. MORGAN, JR., for their cause of action against the above named Defendants, jointly and severally, state as follows:

## Common Allegations

1.      Plaintiffs Kirk Tanner and Deanna Tanner are residents of the City of Adrian, County of Lenawee, State of Michigan, and have been for all times relevant hereto; they bring this action individually and as parents and guardians of Breanne Tanner, Christopher Tanner and Kyler Tanner, Minors.

2.      This action arises under the common law and the constitution and laws of the State of Michigan, and this court has jurisdiction because the amount in controversy exceeds Twenty Five Thousand ($25,000.00) Dollars, exclusive of interest, costs and attorney fees.

3.      The Defendant, Lenawee County Sheriff Department, was and still is a division of the County of Lenawee, a governmental entity, and, as such, at all times pertinent hereto was and is a governmental entity.    The Defendant, County of Lenawee, was and is a governmental entity.

4.      The liability of the Defendants, Lenawee County Sheriff's Department, and County of Lenawee, are predicated on the grossly negligent actions of its employees with regard to the Plaintiffs herein.

5.      The liability of the Lenawee County Sheriff's Department and the County of Lenawee is predicated upon a violation of the Michigan Constitution, Article I, § 1, which states that the government is instituted for the security and protection of the people of the State of Michigan.

2

6.     Defendant, Nathan Andrew Adams, at all times relevant to hereto, was and is a resident of the County of Lenawee, State of Michigan, and was acting pursuant to his duties as an employee and deputy of the Lenawee County Sheriff's Department, for the County of Lenawee, in furtherance of the duties of the County of Lenawee. However, said activities were not performed in the exercise or discharge of a governmental function.

7.     Defendant, Christopher John Hunt, at all times relevant to hereto, was and is a resident of the County of Lenawee, State of Michigan, and was acting pursuant to his duties as an employee and deputy of the Lenawee County Sheriff's Department, for the County of Lenawee, in furtherance of the duties of the County of Lenawee. However, said activities were not performed in the exercise or discharge of a governmental function.

8.     Defendant, Cletus B. Smith, at all times relevant to hereto, was and is a resident of the County of Lenawee, State of Michigan, and was acting pursuant to his duties as an employee and lieutenant of the Lenawee County Sheriff's Department, for the County of Lenawee, in furtherance of the duties of the County of Lenawee. However, said activities were not performed in the exercise or discharge of a governmental function.

9.     Defendant, Larry Richardson, at all times relevant to hereto, was and is a resident of the County of Lenawee, State of Michigan, and was acting pursuant to his duties as an employee and sheriff of the Lenawee County Sheriff's Department, for the County of Lenawee, in furtherance of the duties of the County of Lenawee.  However,

3

said activities were not performed in the exercise or discharge of a governmental function.

10.    The Defendants, at all times mentioned above, were acting under color of state law.

11.    On October 12 and 13, 2001, Plaintiffs Kirk and Deanna Tanner were residing at 1566 E. Carlton Road, Adrian, Michigan, with their three children, named as Plaintiffs above.  On or about the evening of October 12, 2001, Deanna Tanner's sister, Cynthia Baker, sought out the comfort and assistance of her sister Deanna Tanner, due to verbal and potentially violent physical abuse suffered by Cynthia from her then husband, Keith Baker.   It was decided Cynthia would spend at least that evening in the Tanner home.

12.    Sometime between 2:00 and 3:00 a.m. on October 13, 2002, Keith Baker arrived back at the Tanner home.  At this time, the 3 children were all asleep, but Deanna and Cynthia were still up talking.  They saw car lights quickly approaching on the driveway and immediately surmised it was Keith Baker, Cynthia's husband. Deanna immediately called 911 seeking assistance, while Cynthia went into Breanne's bedroom to hide after having hid Breanne Tanner in the closet.

13.    Deanna Tanner informed 911 that her brother-in-law had come to their premises looking for his wife, who is her sister, and that he is drunk, erratic, making threats and has a gun.   She was informed that there was a unit close by, which would be sent immediately.   She was also told to stay on the line, which she did.   According to the Sheriff's Report, a car was immediately dispatched, along with a back-up state police car.

4

14.    Keith Baker began kicking in the door so Deanna Tanner informed 911 that Keith was trying to kick the door in and banging on walls and so forth.   Kirk Tanner yelled out the door at Keith, telling him that the cops had been called.    Instead of leaving, Keith began circling the house, banging on the doors and walls as he went.

15.    The next thing the Deanna and Kirk Tanner observed from inside the house was Keith's vehicle backing out the driveway so it appeared that he was leaving; suddenly his vehicle stopped when lights from the sheriff's car entered the driveway. Kirk Tanner had been watching for the police out the front window and was flicking the front porch lights on and off to signal their house for the police.

16.    After the sheriff's car, containing defendants Adams and Hunt, pulled into the driveway, the Tanners observed Keith Baker pull his vehicle back up the driveway. The police then pulled up very close behind Keith Baker's vehicle.   Keith Baker then exited his vehicle.   Kirk Tanner continued to observe the situation from inside his home. He observed Keith Baker loading a gun.   Keith Baker went back to the front door to try to open it because he wanted the deputies to get involved since Keith was coming around the back of the house.    The door was stuck and he couldn't get it open.

17.    Meanwhile, Deanna Tanner remains on the phone with 911 and one of her sons, KC, is with her and very scared.    Kirk Tanner was trying to get his other son out of the living room.   At some point, KC began running around the house, hysterical.

18.    Kirk Tanner heard a shot and was hit in his right hand.   The glass in the back sliding door to his home shattered.   Kirk Tanner was then immediately shot again in his left arm.   Kirk was then shot again in the chest and then reached his bedroom, where Deanna was still on the phone informing 911 that her husband has been shot by

5

Keith Baker.   Keith then reached around Kirk and shot Deanna once in the chest on the left side near her collarbone.   Deanna was shot at least one more time through the right breast.

19.    After Deanna Tanner was shot, Kirk Tanner managed to swing a piece of wood that he had picked up and hit Keith Baker in the head.   Keith turned to him and said "Now you are going to die for sure" and he shot Kirk in the stomach.   Deanna ran to the front door looking for the police, wondering where they were.

20.    Kirk managed to get back into the living room but due to his bleeding and shock, collapsed.   Deanna then ran out the back and around to the front of the house and saw one deputy hiding by the front door of the police car on the passenger side and a second deputy hiding behind another vehicle, her husband's truck, further to the right, which would have been the same side as the passenger side of the sheriff's department vehicle.

21.    Deanna went to one of the deputies and told him "I've been shot twice, my husband's been shot, my kids and sister are in there, my brother-in-law is the only one with a gun, can you help?"  Deanna said the officer replied:  "No m'am.  We can't." She then said to him, "Well, I've been shot twice, I am about to pass out, can you help me." Then he placed her into his car, backed it out of the driveway, and faced it to the east and told her to watch for the ambulance.    Her son KC then came running to the car and got in the back with her.

22.    Deanna could see the ambulance off to the west but it was not coming down towards their house.  Her son KC crawled through the plexiglass between the front and rear seats of the deputy's car and actually backed the car up to where the

6

ambulance was and Deanna got out and went to the ambulance for aid. The individual in the ambulance did not get out but told her to go around to the back where she and KC were then admitted.

23.    Kyler Tanner, who was still in the house, went to get towels for his Dad to stop his bleeding. In doing so, he was unfortunate enough to witness the scene in Breanne's bedroom, where Keith Baker shot his wife Cynthia four times, killing her and then killed himself. One of his bullets hit Breanne Tanner, who was still hiding in the closet listening to the gruesome series of events. A short time later, Kyler and Brianne ran out of the house together.

24.    Kyler and Breanne immediately informed the police what they had seen and heard and that Uncle Keith had killed himself. Meanwhile Kirk Tanner was still in the living room bleeding from his gunshot wounds. The police did nothing.

25.    According to the police report, it was 2:59 a.m. when the call to 911 was made, and Deputies Hunt and Adams arrived at the scene at 3:02 A.M. The first radio request for an Emergency Response Team (E.R.T.) was made at approximately 3:14 A.M. The report further indicates that KC Tanner spoke with a deputy at the scene and related the events that had occurred inside the home, including the fact that his father, Kirk Tanner, was still in the home with blood coming out of his chest. During the time that deputies Adams and Hunt were at the scene, neither had entered the Tanner home, despite the fact that they saw Keith Baker with a gun, Baker failed to heed their warnings to stop, they heard shots being fired, and knew that Kirk Tanner was inside and bleeding from gunshot wounds. At some point in time Deputies Adams and Hunt requested permission by radio from Defendant Cletus Smith to enter the home but were

7

told by Smith not to enter; to wait for the Emergency Response Team.  The first time any law enforcement personnel entered the Tanner home on October 13, 2001, was when the Emergency Response Team (ERT) team arrived, which was approximately two (2) hours after the 911 call for help was made.   They secured the scene and found Kirk Tanner lying in the living room, seriously injured from several gunshot wounds.

26.     Deanna Tanner spoke with Sheriff Larry Richardson at the scene and told him that her son Kyler saw Keith Baker kill himself and that her husband had been shot and needed medical attention and still no one entered the home.

27.     Life flight was eventually called to the scene and Deanna and Breanne Tanner were taken to Bixby Hospital; Breanne was treated and released; Deanna was then life-flighted to St. Joseph's Hospital where she was admitted for several days and then transferred to University of Michigan Hospital.   Kirk Tanner was treated at the scene by the Madison Township Fire Department and the University of Michigan Survival Flight.   The UM Survivial Flight Assessment Record indicates they arrived on the scene at 4:10 A.M.   At that time the police had still not secured the scene.  They entered the Tanner home at 4:51 A.M.  After being stabilized, Kirk Tanner was flown to University of Michigan Hospital.

## COUNT I

**(Gross Negligence of Defendants Nathan Adams, Christopher Hunt
Cletus Smith and Larry Richardson)**

28.     Plaintiffs hereby restate, reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 27 above as through fully set forth herein.

8

29.     Defendants Adams, Hunt, Smith and Richardson committed acts or omissions constituting gross negligence including but not limited to the following:

a.     Failing to provide any protection to the occupants of the Tanner home, including each of the Tanner Plaintiffs, after having responded to a 911 call for help at the Tanner home, equipped with the knowledge that the assailant was armed with a gun, intoxicated and threatening and after having arrived at the home for the sole purpose of providing police protection in response to a call for help, thereby giving Keith Baker the freedom to shoot, seriously injure and traumatize the Plaintiffs herein.

b.     Failing to make any attempt whatsoever to prevent the assailant, Keith Baker, from entering the Tanner home, after having commanded him to stop and show his hands and after having observed the assailant withdraw his right hand from his waistband, holding a black semi-automatic handgun, thus giving him the freedom to shoot, seriously injure and traumatize the Plaintiffs herein.

c.     Failing to make any attempt to aid or protect the occupants of the Tanner home after having heard the first shots fired by the assailant;

d.     Failing to enter the Tanner home and secure medical assistance for Kirk Tanner after having been informed that the assailant had killed himself and that Kirk Tanner had been shot and was bleeding;

e.     Refusing, ignoring and otherwise failing to follow the policies of the Lenawee County Sheriff's Department for dealing with situations such as that which existed at the Tanner home in the early morning hours of October 13, 2001.

f.     Upon arriving at the scene, Defendants Smith and Richardson, failed to provide any police security and protection to the Plaintiffs under the circumstances that existed as alleged herein by instructing Deputies Adams and Hunt to do nothing and wait for a SWAT team to arrive.

30.     The above acts and/or omissions of said Defendants, and each of them, constitute conduct so reckless as to demonstrate a substantial lack of concern for whether an injury resulted to the Plaintiffs.

9

31.   The above stated acts and/or omissions of said Defendants, and each of them, constitute gross negligence which was the proximate cause of the injury and damages to the Plaintiffs, and each of them, as set forth below.

Wherefore, and for all of the foregoing reasons, Plaintiffs request that a judgment be rendered against the above-named Defendants, jointly and severally, in whatever amount that is deemed to be fair and just and in excess of the jurisdictional limits of the Lenawee County Circuit Court, plus costs, interest and attorney fees.

### Count III

### Violation of Plaintiffs' Rights Under The Michigan Constitution By Defendants Lenawee County Sheriff's Department, Nathan Adams, Christopher Hunt, Cletus Smith & Larry Richardson

32.   Plaintiffs hereby restate, reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 31 above as through fully set forth herein.

33.   Article I, § 1 of the Michigan Constitution provides that the people of the State of Michigan have a right to security and protection from the state.

34.   Defendants, Lenawee County Sheriff's Department, a division of the County of Lenawee, and the County of Lenawee, a governmental entity, acting within the scope of their authority as governmental agencies, and Defendants Larry Richardson, Sheriff of the Lenawee County Sheriff's Department, Cletus B. Smith, Lieutenant of the Lenawee County Sheriff's Department, and Nathan Adams and Christopher Hunt, deputies of the Lenawee County Sheriff's Department, acting within the scope of their authority as employees of a governmental agency, are civilly liable to

10

the Plaintiffs, under the Michigan Constitution, for subjecting Plaintiffs to deprivation of their rights to security and protection from the State under the Michigan Constitution, Article I, § 1, which imposes a duty on the police to protect its citizens under the circumstances as alleged herein.

35.    Defendants breached this duty in the following respects, among others:

a.    Failing to provide protection and assistance to the Tanner Plaintiffs after having responded to their 911 call for police assistance and protection, in each of the ways set forth in Paragraphs 29 (a) through (f) above;

b.    Acting pursuant to policies and procedures of the Lenawee County Sheriff's Department which permitted and/or dictated such failure to provide protection and assistance under the circumstances alleged herein; or

c.    Not acting pursuant to policies and procedures of the Lenawee County Sheriff's Department because no such policies and procedures had been formulated, whereas they should have been;

36. The aforementioned acts and/or omissions of the Defendants, and each of them, were unreasonable, willful and wanton, grossly negligent and/or deliberately indifferent to and/or in violation of the Plaintiffs' rights to security and protection under the Michigan Constitution.

37.    The aforementioned acts and/or omissions of the Defendants, and each of them, were the direct and proximate cause of the injuries and damages to the Plaintiffs as set forth below.

Wherefore, and for all of the foregoing reasons, Plaintiffs request that a judgment be rendered against the above-named Defendants, jointly and severally, in whatever amount that is deemed to be fair and just and in excess of the jurisdictional limits of the Lenawee County Circuit Court, plus costs, interest and attorney fees.

11

**Injuries And Damages**

38.     As the direct and proximate result of the foregoing acts and/or omissions of the Defendants, and each of them, Plaintiff Deanna Tanner sustained the following injuries and damages, among others:

    a.  Multiple gunshot wounds to her chest;

    b.  Pain and Suffering, past and future;

    c.  Extreme fright, shock and trauma;

    d.  Extreme emotional distress, past and future;

    g.  Permanent injury;

    h.  Permanent scarring and disfigurement;

    i.  Loss of enjoyment of life, past and future;

    j.  Loss of society, companionship and conjugal relationship with husband;

    e.  Lost wages, past and future;

39.     As the direct and proximate result of the foregoing acts and/or omissions of the Defendants, and each of them, Plaintiff Kirk Tanner sustained the following injuries and damages, among others:

    a.  Multiple gun shot wounds to his hand, elbow, chest, abdomen and extremities requiring surgery;

    b.  Pain and Suffering, past and future;

    c.  Extreme fright, shock and trauma;

    d.  Extreme emotional distress, past and future;

    k.  Permanent injury and disability;

    l.  Permanent scarring and disfigurement;

12

    m. Loss of enjoyment of life, past and future;

    n. Loss of society, companionship and conjugal relationship with
       wife;

    n. Lost wages, past and future;

    40.    As the direct and proximate result of the foregoing acts and/or omissions of the Defendants, and each of them, Plaintiff Breanne Tanner sustained the following injuries and damages, among others:

    a. A gunshot wound to the left leg and foot;

    b. Pain and Suffering, past and future;

    c. Extreme fright, shock and trauma;

    d. Loss of enjoyment of life, past and future;

    e. Fear for her own safety as well as that as her family.

    41.    As the direct and proximate result of the foregoing acts and/or omissions of the Defendants, and each of them, Plaintiff Kyler Tanner sustained the following injuries and damages, among others:

    a. Extreme fright, shock and trauma;

    b. Fear for his own safety as well as that of his family.

    42.    As the direct and proximate result of the foregoing acts and/or omissions of the Defendants, and each of them, Plaintiff Christopher Tanner sustained the following injuries and damages, among others:

    a. Extreme fright, shock and trauma;

    b. Fear for his own safety as well as that of his family.

13

Wherefore, and for all of the foregoing reasons, Plaintiffs request that a judgment be rendered against the above-named Defendants, jointly and severally, in whatever amount that is deemed to be fair and just and in excess of the jurisdictional limits of the Lenawee County Circuit Court, plus costs, interest and attorney fees.

Respectfully submitted,

MAZUR MORGAN MEYERS & KITTEL, PLLC

BY:_____

      Courtney E. Morgan, Jr. (P29137)
      Attorney for Plaintiffs
      660 Woodward, Suite 1490
      Detroit, MI 48226-3592
      (313) 961-0130

DATED: September 13, 2002

## DEMAND FOR JURY TRIAL

NOW COME the above-captioned plaintiffs, Kirk Tanner and Deanna Tanner, Individually and as natural guardians and parents of Breanne Tanner, Christopher Tanner and Tyler Tanner, by and through their attorneys, MAZUR MORGAN MEYERS & KITTEL, PLLC, and hereby demand a trial by jury in the above-entitled cause of action.

Respectfully submitted,

MAZUR MORGAN MEYERS & KITTEL, PLLC

BY:_____

      Courtney E. Morgan, Jr. (P29137)
      Attorney for Plaintiffs
      660 Woodward, Suite 1490
      Detroit, MI 48226-3592
      (313) 961-0130

DATED: September 13, 2002

14

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF LENAWEE

KIRK TANNER and DEANNA TANNER
Individually, and as natural guardians,
parents and Next Friend of BREANNE
TANNER, KIRK CHRISTOPHER (KC)
TANNER and KYLER TANNER,

          Plaintiffs,

vs.

LENAWEE COUNTY SHERIFF'S
DEPARTMENT, a division of the COUNTY of
LENAWEE, a Michigan governmental agency,
COUNTY OF LENAWEE, a governmental agency,
NATHAN ANDREW ADAMS, CHRISTOPHER
JOHN HUNT, CLETUS  B. SMITH and
LARRY RICHARDSON, Jointly and
Severally,

          Defendants.

C.A. #02-937-NO
HON. TIMOTHY P. PICKARD



FILED
39th CIRCUIT COURT

OCT 2 3 2002

LOU ANN BLUNTSCHLY
LENAWEE CO. CLERK ADRIAN MI

_____/

Courtney E. Morgan, Jr. (P29137)
MAZUR MORGAN MEYERS &
  KITTEL, PLLC
Attorney for Plaintiffs
660 Woodward, Ste.1490
Detroit, MI 48226
(313) 961-0130

<u>**FIRST AMENDED COMPLAINT AND JURY DEMAND**</u>

      Plaintiffs, KIRK TANNER and DEANNA TANNER, Individually and as natural

guardians and parents of BREANNE TANNER, KIRK CHRISTOPHER (KC) TANNER

and KYLER TANNER, through their attorneys, MAZUR MORGAN MEYERS & KITTEL,

PLLC, and COURTNEY E. MORGAN, JR., submit the following First Amended

Complaint for their cause of action against the above-named Defendants, jointly and severally:

## Common Allegations

1.     Plaintiffs Kirk Tanner and Deanna Tanner are residents of the City of Adrian, County of Lenawee, State of Michigan, and have been for all times relevant hereto; they bring this action individually and as parents and guardians of Breanne Tanner, Kirk Christopher (KC) Tanner and Kyler Tanner, Minors.

2.     This action arises under the common law and the constitution and laws of the State of Michigan, and this court has jurisdiction because the amount in controversy exceeds Twenty Five Thousand ($25,000.00) Dollars, exclusive of interest, costs and attorney fees.

3.     The Defendant, Lenawee County Sheriff Department, was and still is a division of the County of Lenawee, a governmental entity, and, as such, at all times pertinent hereto was and is a governmental entity.    The Defendant, County of Lenawee, was and is a governmental entity.

4.     The liability of the Defendants, Lenawee County Sheriff's Department, and County of Lenawee, are predicated on the grossly negligent actions of its employees with regard to the Plaintiffs herein.

5.     The liability of the Lenawee County Sheriff's Department and the County of Lenawee is predicated upon a violation of the Michigan Constitution, Article I, § 1, which states that the government is instituted for the security and protection of the people of the State of Michigan.

2

6.     Defendant, Nathan Andrew Adams, at all times relevant to hereto, was and is a resident of the County of Lenawee, State of Michigan, and was acting pursuant to his duties as an employee and deputy of the Lenawee County Sheriff's Department, for the County of Lenawee, in furtherance of the duties of the County of Lenawee. However, said activities were not performed in the exercise or discharge of a governmental function or, in the alternative, were performed in violation of constitutionally imposed duties.

7.     Defendant, Christopher John Hunt, at all times relevant to hereto, was and is a resident of the County of Lenawee, State of Michigan, and was acting pursuant to his duties as an employee and deputy of the Lenawee County Sheriff's Department, for the County of Lenawee, in furtherance of the duties of the County of Lenawee. However, said activities were not performed in the exercise or discharge of a governmental function or, in the alternative, were performed in violation of constitutionally imposed duties.

8.     Defendant, Cletus B. Smith, at all times relevant to hereto, was and is a resident of the County of Lenawee, State of Michigan, and was acting pursuant to his duties as an employee and lieutenant of the Lenawee County Sheriff's Department, for the County of Lenawee, in furtherance of the duties of the County of Lenawee. However, said activities were not performed in the exercise or discharge of a governmental function or, in the alternative, were performed in violation of constitutionally imposed duties.

9.     Defendant, Larry Richardson, at all times relevant to hereto, was and is a resident of the County of Lenawee, State of Michigan, and was acting pursuant to his

3

duties as an employee and sheriff of the Lenawee County Sheriff's Department, for the County of Lenawee, in furtherance of the duties of the County of Lenawee. However, said activities were not performed in the exercise or discharge of a governmental function or, in the alternative, were performed in violation of constitutionally imposed duties.

10. The Defendants, at all times mentioned above, were acting under color of state law.

11. On October 12 and 13, 2001, Plaintiffs Kirk and Deanna Tanner were residing at 1566 E. Carlton Road, Adrian, Michigan, with their three children, named as Plaintiffs above. On or about the evening of October 12, 2001, Deanna Tanner's sister, Cynthia Baker, sought out the comfort and assistance of her sister Deanna Tanner, due to verbal and potentially violent physical abuse suffered by Cynthia from her then husband, Keith Baker. It was decided Cynthia would spend at least that evening in the Tanner home.

12. Sometime between 2:00 and 3:00 a.m. on October 13, 2001, Keith Baker arrived at the Tanner home. At this time, the 3 children were all asleep, but Deanna and Cynthia were still up talking. They saw car lights quickly approaching on the driveway and immediately surmised it was Keith Baker, Cynthia's husband. Deanna immediately called 911 seeking assistance, while Cynthia went into Breanne's bedroom to hide after having hid Breanne Tanner in the closet.

13. Deanna Tanner informed 911 that her brother-in-law had come to their premises looking for his wife, who is her sister, and that he is drunk, erratic, making threats and has a gun. She was informed that there was a unit close by, which would

4

be sent immediately. She was also told to stay on the line, which she did. According to the Sheriff's Report, a car was immediately dispatched, along with a back-up state police car.

14. Keith Baker began kicking in the door so Deanna Tanner informed 911 that Keith was trying to kick the door in and banging on walls and so forth. Kirk Tanner yelled out the door at Keith, telling him that the cops had been called. Instead of leaving, Keith began circling the house, banging on the doors and walls as he went.

15. The next thing that Deanna and Kirk Tanner observed from inside the house was Keith's vehicle backing out the driveway so it appeared that he was leaving; suddenly his vehicle stopped when lights from the sheriff's car entered the driveway. Kirk Tanner had been watching for the police out the front window and was flicking the front porch lights on and off to signal their house for the police.

16. After the sheriff's car, containing defendants Adams and Hunt, pulled into the driveway, the Tanners observed Keith Baker pull his vehicle back up the driveway. The police then pulled up very close behind Keith Baker's vehicle. Keith Baker then exited his vehicle. Kirk Tanner continued to observe the situation from inside his home. He observed Keith Baker loading a gun, as did Officers Hunt and Adams. Kirk Tanner went back to the front door to try to open it because he wanted the deputies to get involved since Keith was coming around the back of the house. The door was stuck and he couldn't get it open.

17. Meanwhile, Deanna Tanner remained on the phone with 911 and one of her sons, KC, is with her and very scared. Kirk Tanner was trying to get his other son out of the living room. At some point, KC began running around the house, hysterical.

5

18.    Kirk Tanner heard a shot and was hit in his right hand.  The glass in the back sliding door to his home shattered.   Kirk Tanner was then immediately shot again in his left arm.   Kirk was then shot again in the chest and then reached his bedroom, where Deanna was still on the phone informing 911 that her husband has been shot by Keith Baker.   Keith then reached around Kirk and shot Deanna once in the chest on the left side near her collarbone.   Deanna was shot at least one more time through the right breast.

19.    After Deanna Tanner was shot, Kirk Tanner managed to swing a piece of wood that he had picked up and hit Keith Baker in the head.  Keith turned to him and said "Now you are going to die for sure" and he shot Kirk in the stomach.   Deanna ran to the front door looking for the police, wondering where they were.

20.    Kirk managed to get back into the living room but due to his bleeding and shock, collapsed.   Deanna then ran out the back and around to the front of the house and saw one deputy hiding by the front door of the police car on the passenger side and a second deputy hiding behind another vehicle, her husband's truck, further to the right, which would have been the same side as the passenger side of the sheriff's department vehicle.

21.    Deanna went to one of the deputies and told him "I've been shot twice, my husband's been shot, my kids and sister are in there, my brother-in-law is the only one with a gun, can you help?"  The officer replied:  "No m'am.  We can't."   She then said to him, "Well, I've been shot twice, I am about to pass out, can you help me."  Then he placed her into his car, backed it out of the driveway, and faced it to the east and told

6

her to watch for the ambulance.    Her son KC then came running to the car and got in the back with her.

22.    Deanna could see the ambulance off to the west but it was not coming down towards their house.  Her son KC crawled through the plexiglass between the front and rear seats of the deputy's car and actually backed the car up to where the ambulance was and Deanna got out and went to the ambulance for aid.   The individual in the ambulance did not get out but told her to go around to the back where she and KC were then admitted.

23.    Kyler Tanner, who was still in the house, went to get towels for his Dad to stop his bleeding.  In doing so, he was unfortunate enough to witness the scene in Breanne's bedroom, where Keith Baker shot his wife Cynthia four times, killing her and then killed himself.  One of his bullets hit Breanne Tanner, who was still hiding in the closet listening to the gruesome series of events.   A short time later, Kyler and Breanne ran out of the house together.

24.    Kyler and Breanne immediately informed the police what they had seen and heard and that Uncle Keith had killed himself.   Meanwhile Kirk Tanner was still in the living room bleeding from his gunshot wounds.  The police did not enter the house to aid Kirk Tanner.

25.    According to the police report, it was 2:59 a.m. when the call to 911 was made, and Deputies Hunt and Adams arrived at the scene at 3:02 A.M.   The first radio request for an Emergency Response Team (E.R.T.) was made at approximately 3:14 A.M. The report further indicates that KC Tanner spoke with a deputy at the scene and related the events that had occurred inside the home, including the fact that his father,

Kirk Tanner, was still in the home with blood coming out of his chest.  During the time that deputies Adams and Hunt were at the scene, neither had entered the Tanner home, despite the fact that they saw Keith Baker with a gun, Baker failed to heed their warnings to stop, they heard shots being fired, and knew that Kirk Tanner was inside and bleeding from gunshot wounds.   At some point in time Deputies Adams and Hunt requested permission by radio from Defendant Cletus Smith to enter the home but were told by Smith not to enter.  The first time any law enforcement personnel entered the Tanner home on October 13, 2001, was when the Emergency Response Team (ERT) team arrived, which was approximately two (2) hours after the 911 call for help was made.     They secured the scene and found Kirk Tanner lying in the living room, seriously injured from several gunshot wounds.

26.    Deanna Tanner spoke with Sheriff Larry Richardson at the scene and told him that her son Kyler saw Keith Baker kill himself and that her husband had been shot and needed medical attention and still no one entered the home.

27.    Life flight was eventually called to the scene and Deanna and Breanne Tanner were taken to Bixby Hospital; Breanne was treated and released; Deanna was then life-flighted to St. Joseph's Hospital where she was admitted for several days and then transferred to University of Michigan Hospital.   Kirk Tanner was treated at the scene by the Madison Township Fire Department and the University of Michigan Survival Flight.   The UM Survivial Flight Assessment Record indicates they arrived on the scene at 4:10 A.M.    At that time the police had still not secured the scene.  They entered the Tanner home at 4:51 A.M.  After being stabilized, Kirk Tanner was flown to University of Michigan Hospital.

8

## COUNT I

### (Negligence and Gross Negligence of Defendants Nathan Adams, Christopher Hunt, Cletus B. Smith and Larry Richardson)

28.    Plaintiffs hereby restate, reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 27 above as through fully set forth herein.

29.    The Defendants Adams and Hunt had a special relationship with the Plaintiffs herein such that they had a duty to protect said Plaintiffs under the circumstances alleged herein.  This special relationship is based upon the following:

a.    An assumption by the Officers Adams and Hunt, of an affirmative duty to act on behalf of the Plaintiffs herein on the date in question.  This duty was assumed through the actions of Defendants Adams and Hunt in responding to Plaintiff Deanna Tanner's 911 call for help on behalf of herself, her family and her sister Cynthia Baker, which included notification that her brother-in-law had come to their premises looking for his wife, who is her sister, and that he is drunk, erratic, making threats and has a gun; in the actions of Defendants Adams and Hunt when they arrived at the scene in blocking the exit of the assailant Keith Baker, who was leaving the Tanner premises when the officers arrived; in the actions of Defendants Adams and Hunt in ordering the assailant, Keith Baker, who was armed and dangerous, to stop and then failing to make sure he stopped and did not enter the Tanner home after their order was issued and ignored; in the actions of Defendants Adams and Hunt, in requesting permission by radio to enter the Tanner home, which evidences their intent to provide protection; and by the actions of Defendants Smith and Richardson in telling Defendants Adams and Hunt not to enter the home after permission to do so had been requested.

b.    Knowledge on the part of Defendants Adams, Hunt and Smith that their inaction in not securing the assailant, Keith Baker, who was visibly armed, dangerous and drunk, could lead to harm;

c.    There was direct contact between the Defendants Adams and Hunt and the injured parties as follows:  Plaintiff Kirk Tanner had been watching for the police out the front window and was flicking the front porch lights on and off to signal the house for the police; Deanna Tanner went outside to one of the deputies and asked for help because she and her husband had been shot and her children and sister were still in the house with the assailant who was the only one with a gun; although the deputies said they would not go inside the house, upon orders from Defendants Smith and

9

Richardson, they did assist Deanna Tanner into a police vehicle and continued to give the impression, by remaining on guard at the scene, that something would be done to help the family;

    d.   The occupants of the home justifiably relied on the affirmative undertaking of the Defendants herein; because they knew the police had arrived, blocked the assailant in and ordered him to stop, they reasonably believed it was safer for them to remain inside the home; had they known the police were only forcing Keith Baker, by their actions in blocking him in and ordering him to stop and then allowing him the freedom to ignore their order, to enter the home, they would have known that it was safer for them to exit the front of the house; alternatively, had plaintiffs exited the front door of their home, they had no assurance that Officers Hunt and Adams would not have shot them.

    30.   Defendants Adams, Hunt, Smith and Richardson committed acts and/or omissions constituting negligence and/or gross negligence including but not limited to the following:

    a. Providing wholly inadequate protection to the occupants of the Tanner home, including each of the Tanner Plaintiffs, after having responded to a 911 call for help at the Tanner home, equipped with the knowledge that the assailant was armed with a gun, intoxicated and threatening and after having arrived at the home for the sole purpose of providing police protection in response to a call for help, thereby giving Keith Baker the freedom to shoot, seriously injure and traumatize the Plaintiffs herein.

    b.  Allowing the assailant, Keith Baker, to enter the Tanner home, after having commanded him to stop and show his hands and after having observed the assailant withdraw his right hand from his waistband, holding a black semi-automatic handgun, thus giving him the freedom to shoot, seriously injure and traumatize the Plaintiffs herein.

    c.   Providing wholly inadequate aid or protection to the occupants of the Tanner home after having heard the first shots fired by the assailant;

    d.   Remaining outside the Tanner home and preventing medical assistance for Kirk Tanner after having been informed that the assailant had killed himself and that Kirk Tanner had been shot and was bleeding;

    e. Acting in a manner which increased the risk of harm to the safety of the Plaintiffs;

f.    Refusing, ignoring and otherwise failing to follow the policies of Lenawee County and the Lenawee County Sheriff's Department for dealing with situations such as that which existed at the Tanner home in the early morning hours of October 13, 2001.

g.    Upon arriving at the scene, Defendants Smith and Richardson provided wholly inadequate police security and protection to the Plaintiffs under the circumstances that existed as alleged herein by instructing Deputies Adams and Hunt to stay out of the home.

31.    The above acts and/or omissions of said Defendants, and each of them, constitute conduct so reckless as to demonstrate a substantial lack of concern for whether an injury would result to the Plaintiffs.

32.    The above stated acts and/or omissions of said Defendants, and each of them, constitute negligence and/or gross negligence which was the proximate cause of the injury and damages to the Plaintiffs, and each of them, as set forth below.

WHEREFORE, and for all of the foregoing reasons, Plaintiffs request that a judgment be rendered against the above-named Defendants, jointly and severally, in whatever amount that is deemed to be fair and just and in excess of the jurisdictional limits of the Lenawee County Circuit Court, plus costs, interest and attorney fees.

### Count II

### Violation of Plaintiffs' Rights Under The Michigan Constitution By Defendants, County of Lenawee, Lenawee County Sheriff's Department, Nathan Adams, Christopher Hunt, Cletus Smith & Larry Richardson

33.    Plaintiffs hereby restate, reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 32 above as through fully set forth herein.

11

34.   Article I, § 1 of the Michigan Constitution provides that the people of the State of Michigan have a right to security and protection from the state.

35.   Defendants, Lenawee County Sheriff's Department, a division of the County of Lenawee, and the County of Lenawee, a governmental entity, acting pursuant to their authority as granted by the people of the State of Michigan, and Defendants Larry Richardson, Sheriff of the Lenawee County Sheriff's Department, Cletus B. Smith, Lieutenant of the Lenawee County Sheriff's Department, and Nathan Adams and Christopher Hunt, deputies of the Lenawee County Sheriff's Department, acting pursuant to their authority as employees of a governmental agency, are civilly liable to the Plaintiffs, under the Michigan Constitution, for subjecting Plaintiffs to deprivation of their rights to security and protection from the State under the Michigan Constitution, Article I, § 1, which imposes a duty on the police to protect its citizens under the circumstances as alleged herein.

36.   Defendants breached this duty in the following respects, among others:

a.     Providing wholly inadequate protection and assistance to the Tanner Plaintiffs after having responded to their 911 call for police assistance and protection, in each of the ways set forth in Paragraphs 29 and 30 above;

b.     Acting in a manner which increased the risk of harm to the safety of the Plaintiffs;

c.     Acting pursuant to policies and procedures of the Lenawee County Sheriff's Department which permitted and/or dictated such inadequate protection and assistance under the circumstances alleged herein; or

d.     Not acting pursuant to policies and procedures of the Lenawee County Sheriff's Department because no such policies and procedures had been formulated, whereas they should have been;

12

37. The aforementioned acts and/or omissions of the Defendants, and each of them, were unreasonable, willful and wanton, grossly negligent and/or deliberately indifferent to and/or in violation of the Plaintiffs' rights to security and protection under the Michigan Constitution.

38. The aforementioned acts and/or omissions of the Defendants, and each of them, were the direct and proximate cause of the injuries and damages to the Plaintiffs as set forth below.

WHEREFORE, and for all of the foregoing reasons, Plaintiffs request that a judgment be rendered against the above-named Defendants, jointly and severally, in whatever amount that is deemed to be fair and just and in excess of the jurisdictional limits of the Lenawee County Circuit Court, plus costs, interest and attorney fees.

### Injuries And Damages

39. As the direct and proximate result of the foregoing acts and/or omissions of the Defendants, and each of them, as set forth in Counts I and II above, Plaintiff Deanna Tanner sustained the following injuries and damages, among others:

    a. Multiple gunshot wounds to her chest;

    b. Pain and Suffering, past and future;

    c. Extreme fright, shock and trauma;

    d. Extreme emotional distress, past and future;

    e. Permanent injury;

    f. Permanent scarring and disfigurement;

    g. Loss of enjoyment of life, past and future;

    h. Loss of society, companionship and conjugal relationship with her

13

husband;

   i.   Lost wages, past and future;

   40.   As the direct and proximate result of the foregoing acts and/or omissions of the Defendants, and each of them, as set forth in Counts I and II above, Plaintiff Kirk Tanner sustained the following injuries and damages, among others:

   a.  Multiple gun shot wounds to his hand, elbow, chest, abdomen and extremities requiring surgery;

   b.  Pain and Suffering, past and future;

   c.  Extreme fright, shock and trauma;

   d.  Extreme emotional distress, past and future;

   e.  Permanent injury and disability;

   f.  Permanent scarring and disfigurement;

   g.  Loss of enjoyment of life, past and future;

   h.  Loss of society, companionship and conjugal relationship with his wife;

   i.  Lost wages, past and future;

   41.   As the direct and proximate result of the foregoing acts and/or omissions of the Defendants, and each of them, as set forth in Counts I and II above, Plaintiff Breanne Tanner sustained the following injuries and damages, among others:

   a.  A gunshot wound to the left leg and foot;

   b.  Pain and Suffering, past and future;

   c.  Extreme fright, shock and trauma;

   d.  Loss of enjoyment of life, past and future;

   e.  Fear for her own safety as well as that as her family.

42.    As the direct and proximate result of the foregoing acts and/or omissions of the Defendants, and each of them, as set forth in Counts I and II above, Plaintiff Kyler Tanner sustained the following injuries and damages, among others:

a.  Extreme fright, shock and trauma;

b.  Fear for his own safety as well as that of his family.

43.    As the direct and proximate result of the foregoing acts and/or omissions of the Defendants, and each of them, as set forth in Counts I and II above, Plaintiff Kirk Christopher (KC) Tanner sustained the following injuries and damages, among others:

a.  Extreme fright, shock and trauma;

b.  Fear for his own safety as well as that of his family.

WHEREFORE, and for all of the foregoing reasons, Plaintiffs request that a judgment be rendered against the above-named Defendants, jointly and severally, in whatever amount that is deemed to be fair and just and in excess of the jurisdictional limits of the Lenawee County Circuit Court, plus costs, interest and attorney fees.

Respectfully submitted,

MAZUR MORGAN MEYERS & KITTEL, PLLC

BY:_____

Courtney E. Morgan, Jr. (P29137)
Attorney for Plaintiffs
660 Woodward, Suite 1490
Detroit, MI 48226-3592
(313) 961-0130

DATED:  October 22, 2002

15

## DEMAND FOR JURY TRIAL

NOW COME the above-captioned plaintiffs, Kirk Tanner and Deanna Tanner,

Individually and as natural guardians and parents of Breanne Tanner, Kirk Christopher

(KC) Tanner and Tyler Tanner, by and through their attorneys, MAZUR MORGAN

MEYERS & KITTEL, PLLC, and hereby demand a trial by jury in the above-entitled

cause of action.

Respectfully submitted,

MAZUR MORGAN MEYERS & KITTEL, PLLC

BY:_____

Courtney E. Morgan, Jr. (P29137)
Attorney for Plaintiffs
660 Woodward, Suite 1490
Detroit, MI 48226-3592
(313) 961-0130

DATED:  October 22, 2002

16

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF LENAWEE

KIRK TANNER and DEANNA TANNER
Individually, and as natural guardians,
parents and Next Friend of BREANNE
TANNER, KIRK CHRISTOPHER (KC)
TANNER and KYLER TANNER,

                        C.A. #02-937-NO
                        HON. TIMOTHY P. PICKARD

          Plaintiffs,

    vs.

COUNTY OF LENAWEE, a governmental agency,
LENAWEE COUNTY SHERIFF'S DEPT.,
a division of the COUNTY of LENAWEE, a
Michigan governmental agency, NATHAN
ANDREW ADAMS, CHRISTOPHER JOHN
HUNT, CLETUS  B. SMITH and LARRY
RICHARDSON, Jointly and Severally,

          Defendants.

_____/

Courtney E. Morgan, Jr. (P29137)
MAZUR MORGAN MEYERS &  KITTEL, PLLC
Attorney for Plaintiffs
660 Woodward, Ste.1490
Detroit, MI 48226
(313) 961-0130

REACH, RANNEY & CARPENTER, P.C.
Cynthia L. Reach (P55903)
Attorney for Defendants
121 West Washington Street, St. 400
Ann Arbor, MI  48104
(734) 994-1400

_____/

## SECOND AMENDED COMPLAINT AND JURY DEMAND

     Plaintiffs, KIRK TANNER and DEANNA TANNER, Individually and as natural

guardians and parents of BREANNE TANNER, KIRK CHRISTOPHER (KC) TANNER

and KYLER TANNER, through their attorneys, MAZUR MORGAN MEYERS & KITTEL, PLLC, and COURTNEY E. MORGAN, JR., submit the following Second Amended Complaint, pursuant to the Court's Order allowing an amendment, for their cause of action against the above-named Defendants, jointly and severally:

<u>**Common Allegations**</u>

1.     Plaintiffs Kirk Tanner and Deanna Tanner are residents of the City of Adrian, County of Lenawee, State of Michigan, and have been for all times relevant hereto; they bring this action individually and as parents and guardians of Breanne Tanner, Kirk Christopher (KC) Tanner and Kyler Tanner, Minors.

2.     This action arises under the common law and the constitution and laws of the State of Michigan, and the U.S. Constitution and this court has jurisdiction because the amount in controversy exceeds Twenty Five Thousand ($25,000.00) Dollars, exclusive of interest, costs and attorney fees.

3.     The Defendant, Lenawee County Sheriff Department, was and still is a division of the County of Lenawee, a governmental entity, and, as such, at all times pertinent hereto was and is a governmental entity.   The Defendant, County of Lenawee, was and is a governmental entity.

4.     The liability of the Defendants, Lenawee County Sheriff's Department, and County of Lenawee, are predicated on their grossly negligent actions and upon their deprivation of the constitutional rights of the Plaintiffs under the Fourteenth Amendment of the U. S. Constitution by their deliberate indifference to the rights of individuals such as Plaintiffs herein with regard to establishment of policies and/or procedures for dealing with situations such as that involved in the instant case, or the failure to establish policies and/or procedures for dealing with situations such as that involved in the instant case where such polices and/or procedures should have been established.

2

5.     The liability of the Lenawee County Sheriff's Department and the County of Lenawee is predicated upon a violation of the Michigan Constitution, Article I, § 1, which states that the government is instituted for the security and protection of the people of the State of Michigan and upon violation of the Fourteenth Amendment to the U. S. Constitution, § 1, for violation of the Plaintiffs substantive due process rights.

6.     Defendant, Nathan Andrew Adams, at all times relevant to hereto, was and is a resident of the County of Lenawee, State of Michigan, and was acting pursuant to his duties as an employee and deputy of the Lenawee County Sheriff's Department, for the County of Lenawee, in furtherance of the duties of the County of Lenawee. However, said activities were not performed in the exercise or discharge of a governmental function or, in the alternative, were performed in violation of constitutionally imposed duties.

7.     Defendant, Christopher John Hunt, at all times relevant to hereto, was and is a resident of the County of Lenawee, State of Michigan, and was acting pursuant to his duties as an employee and deputy of the Lenawee County Sheriff's Department, for the County of Lenawee, in furtherance of the duties of the County of Lenawee. However, said activities were not performed in the exercise or discharge of a governmental function or, in the alternative, were performed in violation of constitutionally imposed duties.

8.     Defendant, Cletus B. Smith, at all times relevant to hereto, was and is a resident of the County of Lenawee, State of Michigan, and was acting pursuant to his duties as an employee and lieutenant of the Lenawee County Sheriff's Department, for the County of Lenawee, in furtherance of the duties of the County of Lenawee.

3

However, said activities were not performed in the exercise or discharge of a governmental function or, in the alternative, were performed in violation of constitutionally imposed duties.

9.     Defendant, Larry Richardson, at all times relevant to hereto, was and is a resident of the County of Lenawee, State of Michigan, and was acting pursuant to his duties as an employee and sheriff of the Lenawee County Sheriff's Department, for the County of Lenawee, in furtherance of the duties of the County of Lenawee. However, said activities were not performed in the exercise or discharge of a governmental function or, in the alternative, were performed in violation of constitutionally imposed duties.

10.     The liability of the individual Defendants is predicated upon their grossly negligence conduct and upon their affirmative acts in depriving the Plaintiffs of their constitutional rights under the Fourteenth Amendment to the U.S. Constitution, which affirmative acts increased the danger to the Plaintiffs herein, in deliberate indifference to their rights and the risk of harm posed to them under the circumstances; at all times mentioned above, said individual Defendants were acting under color of law.

11.     On October 12 and 13, 2001, Plaintiffs Kirk and Deanna Tanner were residing at 1566 E. Carlton Road, Adrian, Michigan, with their three children, named as Plaintiffs above. On or about the evening of October 12, 2001, Deanna Tanner's sister, Cynthia Baker, sought out the comfort and assistance of her sister Deanna Tanner, due to verbal and potentially violent physical abuse suffered by Cynthia from her then husband, Keith Baker. It was decided Cynthia would spend at least that evening in the Tanner home.

4

12.     Sometime between 2:00 and 3:00 a.m. on October 13, 2001, Keith Baker arrived at the Tanner home.  At this time, the 3 children were all asleep, but Deanna and Cynthia were still up talking.   They saw car lights quickly approaching on the driveway and immediately surmised it was Keith Baker, Cynthia's husband.   Deanna immediately called 911 seeking assistance, while Cynthia went into Breanne's bedroom to hide after having hid Breanne Tanner in the closet.

13.     Deanna Tanner informed 911 that her brother-in-law had come to their premises looking for his wife, who is her sister, and that he is drunk, erratic, making threats and has a gun.   She was informed that there was a unit close by, which would be sent immediately.   She was also told to stay on the line, which she did.   According to the Sheriff's Report, a car was immediately dispatched, along with a back-up state police car.

14.     Keith Baker began kicking in the door so Deanna Tanner informed 911 that Keith was trying to kick the door in and banging on walls and so forth.   Kirk Tanner yelled out the door at Keith, telling him that the cops had been called.    Instead of leaving, Keith began circling the house, banging on the doors and walls as he went.

15.     The next thing that Deanna and Kirk Tanner observed from inside the house was Keith's vehicle backing out the driveway so it appeared that he was leaving; suddenly his vehicle stopped when lights from the sheriff's car entered the driveway. Kirk Tanner had been watching for the police out the front window and was flicking the front porch lights on and off to signal their house for the police.

16.     After the sheriff's car, containing defendants Adams and Hunt, pulled into the driveway, the Tanners observed Keith Baker pull his vehicle back up the driveway.

5

The police then pulled up very close behind Keith Baker's vehicle.  Keith Baker then exited his vehicle.  Kirk Tanner continued to observe the situation from inside his home. He observed Keith Baker loading a gun, as did Officers Hunt and Adams.  Kirk Tanner went back to the front door to try to open it because he wanted the deputies to get involved since Keith was coming around the back of the house.   The door was stuck and he couldn't get it open.

17.    Meanwhile, Deanna Tanner remained on the phone with 911 and one of her sons, KC, is with her and very scared.   Kirk Tanner was trying to get his other son out of the living room.  At some point, KC began running around the house, hysterical.

18.    Kirk Tanner heard a shot and was hit in his right hand.  The glass in the back sliding door to his home shattered.   Kirk Tanner was then immediately shot again in his left arm.   Kirk was then shot again in the chest and then reached his bedroom, where Deanna was still on the phone informing 911 that her husband has been shot by Keith Baker.   Keith then reached around Kirk and shot Deanna once in the chest on the left side near her collarbone.   Deanna was shot at least one more time through the right breast.

19.    After Deanna Tanner was shot, Kirk Tanner managed to swing a piece of wood that he had picked up and hit Keith Baker in the head.  Keith turned to him and said "Now you are going to die for sure" and he shot Kirk in the stomach.   Deanna ran to the front door looking for the police, wondering where they were.

20.    Kirk managed to get back into the living room but due to his bleeding and shock, collapsed.   Deanna then ran out the back and around to the front of the house and saw one deputy hiding by the front door of the police car on the passenger side

6

and a second deputy hiding behind another vehicle, her husband's truck, further to the right, which would have been the same side as the passenger side of the sheriff's department vehicle.

21.   Deanna went to one of the deputies and told him "I've been shot twice, my husband's been shot, my kids and sister are in there, my brother-in-law is the only one with a gun, can you help?" The officer replied: "No m'am. We can't." She then said to him, "Well, I've been shot twice, I am about to pass out, can you help me." Then he placed her into his car, backed it out of the driveway, and faced it to the east and told her to watch for the ambulance.   Her son KC then came running to the car and got in the back with her.

22.   Deanna could see the ambulance off to the west but it was not coming down towards their house.  Her son KC crawled through the plexiglass between the front and rear seats of the deputy's car and actually backed the car up to where the ambulance was and Deanna got out and went to the ambulance for aid.  The individual in the ambulance did not get out but told her to go around to the back where she and KC were then admitted.

23.   Kyler Tanner, who was still in the house, went to get towels for his Dad to stop his bleeding.  In doing so, he was unfortunate enough to witness the scene in Breanne's bedroom, where Keith Baker shot his wife Cynthia four times, killing her and then killed himself.  One of his bullets hit Breanne Tanner, who was still hiding in the closet listening to the gruesome series of events.   A short time later, Kyler and Breanne ran out of the house together.

7

24.    Kyler and Breanne immediately informed the police what they had seen and heard and that Uncle Keith had killed himself.    Meanwhile Kirk Tanner was still in the living room bleeding from his gunshot wounds.  The police did not enter the house to aid Kirk Tanner.

25.    According to the police report, it was 2:59 a.m. when the call to 911 was made, and Deputies Hunt and Adams arrived at the scene at 3:02 A.M.   The first radio request for an Emergency Response Team (E.R.T.) was made at approximately 3:14 A.M.  The report further indicates that KC Tanner spoke with a deputy at the scene and related the events that had occurred inside the home, including the fact that his father, Kirk Tanner, was still in the home with blood coming out of his chest.  During the time that deputies Adams and Hunt were at the scene, neither had entered the Tanner home, despite the fact that they saw Keith Baker with a gun, Baker failed to heed their warnings to stop, they heard shots being fired, and knew that Kirk Tanner was inside and bleeding from gunshot wounds.   At some point in time Deputies Adams and Hunt requested permission by radio from Defendant Cletus Smith to enter the home but were told by Smith not to enter.  The first time any law enforcement personnel entered the Tanner home on October 13, 2001, was when the Emergency Response Team (ERT) team arrived, which was approximately two (2) hours after the 911 call for help was made.    They secured the scene and found Kirk Tanner lying in the living room, seriously injured from several gunshot wounds.

26.    Deanna Tanner spoke with Sheriff Larry Richardson at the scene and told him that her son Kyler saw Keith Baker kill himself and that her husband had been shot and needed medical attention and still no one entered the home.

8

27.    Life flight was eventually called to the scene and Deanna and Breanne Tanner were taken to Bixby Hospital; Breanne was treated and released; Deanna was then life-flighted to St. Joseph's Hospital where she was admitted for several days and then transferred to University of Michigan Hospital.    Kirk Tanner was treated at the scene by the Madison Township Fire Department and the University of Michigan Survival Flight.    The UM Survivial Flight Assessment Record indicates they arrived on the scene at 4:10 A.M.    At that time the police had still not secured the scene.    They entered the Tanner home at 4:51 A.M.  After being stabilized, Kirk Tanner was flown to University of Michigan Hospital.

### COUNT I

**(Negligence and Gross Negligence of Defendants Nathan Adams,
Christopher Hunt, Cletus B. Smith and Larry Richardson)**

28.    Plaintiffs hereby restate, reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 27 above as through fully set forth herein.

29.    The Defendants Adams and Hunt had a special relationship with the Plaintiffs herein such that they had a duty to protect said Plaintiffs under the circumstances alleged herein.  This special relationship is based upon the following:

a.    An assumption by the Officers Adams and Hunt, of an affirmative duty to act on behalf of the Plaintiffs herein on the date in question.  This duty was assumed through the actions of Defendants Adams and Hunt in responding to Plaintiff Deanna Tanner's 911 call for help on behalf of herself, her family and her sister Cynthia Baker, which included notification that her brother-in-law had come to their premises looking for his wife, who is her sister, and that he is drunk, erratic, making threats and has a gun; in the actions of Defendants Adams and Hunt when they arrived at the scene in blocking the exit of the assailant Keith Baker, who was leaving the Tanner premises when the officers arrived; in the actions of Defendants Adams and Hunt in ordering the

9

assailant, Keith Baker, who was armed and dangerous, to stop and then failing to make sure he stopped and did not enter the Tanner home after their order was issued and ignored; in the actions of Defendants Adams and Hunt, in requesting permission by radio to enter the Tanner home, which evidences their intent to provide protection; and by the actions of Defendants Smith and Richardson in telling Defendants Adams and Hunt not to enter the home after permission to do so had been requested.

b. Knowledge on the part of Defendants Adams, Hunt and Smith that their inaction in not securing the assailant, Keith Baker, who was visibly armed, dangerous and drunk, could lead to harm;

c. There was direct contact between the Defendants Adams and Hunt and the injured parties as follows: Plaintiff Kirk Tanner had been watching for the police out the front window and was flicking the front porch lights on and off to signal the house for the police; Deanna Tanner went outside to one of the deputies and asked for help because she and her husband had been shot and her children and sister were still in the house with the assailant who was the only one with a gun; although the deputies said they would not go inside the house, upon orders from Defendants Smith and Richardson, they did assist Deanna Tanner into a police vehicle and continued to give the impression, by remaining on guard at the scene, that something would be done to help the family;

d. The occupants of the home justifiably relied on the affirmative undertaking of the Defendants herein; because they knew the police had arrived, blocked the assailant in and ordered him to stop, they reasonably believed it was safer for them to remain inside the home; had they known the police were only forcing Keith Baker, by their actions in blocking him in and ordering him to stop and then allowing him the freedom to ignore their order, to enter the home, they would have known that it was safer for them to exit the front of the house; alternatively, had plaintiffs exited the front door of their home, they had no assurance that Officers Hunt and Adams would not have shot them.

30. Defendants Adams, Hunt, Smith and Richardson committed acts and/or omissions constituting negligence and/or gross negligence including but not limited to the following:

a. Providing wholly inadequate protection to the occupants of the Tanner home, including each of the Tanner Plaintiffs, after having responded to a 911 call for help at the Tanner home, equipped with the knowledge that the assailant was armed with a gun, intoxicated and threatening and after having arrived at the home for the sole purpose of providing police protection in response to a call for help, thereby giving Keith Baker the freedom to shoot, seriously injure and traumatize the Plaintiffs herein.

10

b.  Allowing the assailant, Keith Baker, to enter the Tanner home, after having commanded him to stop and show his hands and after having observed the assailant withdraw his right hand from his waistband, holding a black semi-automatic handgun, thus giving him the freedom to shoot, seriously injure and traumatize the Plaintiffs herein.

c.  Providing wholly inadequate aid or protection to the occupants of the Tanner home after having heard the first shots fired by the assailant;

d.  Remaining outside the Tanner home and preventing medical assistance for Kirk Tanner after having been informed that the assailant had killed himself and that Kirk Tanner had been shot and was bleeding;

e.  Acting in a manner which increased the risk of harm to the safety of the Plaintiffs;

f.  Refusing, ignoring and otherwise failing to follow the policies of Lenawee County and the Lenawee County Sheriff's Department for dealing with situations such as that which existed at the Tanner home in the early morning hours of October 13, 2001.

g.  Upon arriving at the scene, Defendants Smith and Richardson provided wholly inadequate police security and protection to the Plaintiffs under the circumstances that existed as alleged herein by instructing Deputies Adams and Hunt to stay out of the home.

31.  The above acts and/or omissions of said Defendants, and each of them, constitute conduct so reckless as to demonstrate a substantial lack of concern for whether an injury would result to the Plaintiffs.

32.  The above stated acts and/or omissions of said Defendants, and each of them, constitute negligence and/or gross negligence which was the proximate cause of the injury and damages to the Plaintiffs, and each of them, as set forth below.

WHEREFORE, and for all of the foregoing reasons, Plaintiffs request that a judgment be rendered against the above-named Defendants, jointly and severally, in

11

whatever amount that is deemed to be fair and just and in excess of the jurisdictional limits of the Lenawee County Circuit Court, plus costs, interest and attorney fees.

### Count II

### Violation of Plaintiffs' Rights Under The Michigan Constitution By Defendants, County of Lenawee, Lenawee County Sheriff's Department, Nathan Adams, Christopher Hunt, Cletus Smith & Larry Richardson

33.    Plaintiffs hereby restate, reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 32 above as through fully set forth herein.

34.    Article I, § 1 of the Michigan Constitution provides that the people of the State of Michigan have a right to security and protection from the state.

35.    Defendants, Lenawee County Sheriff's Department, a division of the County of Lenawee, and the County of Lenawee, a governmental entity, acting pursuant to their authority as granted by the people of the State of Michigan, and Defendants Larry Richardson, Sheriff of the Lenawee County Sheriff's Department, Cletus B. Smith, Lieutenant of the Lenawee County Sheriff's Department, and Nathan Adams and Christopher Hunt, deputies of the Lenawee County Sheriff's Department, acting pursuant to their authority as employees of a governmental agency, are civilly liable to the Plaintiffs, under the Michigan Constitution, for subjecting Plaintiffs to deprivation of their rights to security and protection from the State under the Michigan Constitution, Article I, § 1, which imposes a duty on the police to protect its citizens under the circumstances as alleged herein.

36.    Defendants breached this duty in the following respects, among others:

12

a.  Providing wholly inadequate protection and assistance to the Tanner Plaintiffs after having responded to their 911 call for police assistance and protection, in each of the ways set forth in Paragraphs 29 and 30 above;

b.  Acting in a manner which increased the risk of harm to the safety of the Plaintiffs;

c.  Acting pursuant to policies and procedures of the Lenawee County Sheriff's Department which permitted and/or dictated such inadequate protection and assistance under the circumstances alleged herein; or

d.  Not acting pursuant to policies and procedures of the Lenawee County Sheriff's Department because no such policies and procedures had been formulated, whereas they should have been;

37.  The aforementioned acts and/or omissions of the Defendants, and each of them, were unreasonable, willful and wanton, grossly negligent and/or deliberately indifferent to and/or in violation of the Plaintiffs' rights to security and protection under the Michigan Constitution.

38.  The aforementioned acts and/or omissions of the Defendants, and each of them, were the direct and proximate cause of the injuries and damages to the Plaintiffs as set forth below.

WHEREFORE, and for all of the foregoing reasons, Plaintiffs request that a judgment be rendered against the above-named Defendants, jointly and severally, in whatever amount that is deemed to be fair and just and in excess of the jurisdictional limits of the Lenawee County Circuit Court, plus costs, interest and attorney fees.

**Count III**

**Liability Of The Individual Defendants Pursuant To
42 U.S.C.A. § 1983, For Deprivation Of The Constitutional**

13

### Rights Of The Plaintiffs' Substantive Due Process Rights
### Under The Fourteenth Amendment To The U.S. Constitution

39.     Plaintiffs hereby reallege and incorporate by reference each and every allegation set forth in Paragraphs 1 through 38 above, as though fully set forth herein, and further state, in the alternative, the following:

40.     42 U.S.C. § 1983 (1988) provides that every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other persons within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

41.     The U. S. Supreme Court has held that a person acts "under color of state law" by using power obtained by virtue of the person's authority under the law.  The Court has further defined "person" to include state employees as well as municipalities. The individual Defendants herein are persons who were acting by virtue of their authority under the law as employees of the County of Lenawee and, thus, were acting under color of state law during the events described herein.

42.     The Fourteenth Amendment to the U. S. Constitution, § 1, provides that "no state shall...deprive any person of life, liberty, or property, without due process of law...." The U. S. Supreme Court has held that the right to bodily integrity, which includes freedom from physical and emotional injury or loss of life, is a well-recognized liberty interest under the Fourteenth Amendment.

14

43. The individual Defendants herein deprived the Plaintiffs, and each of them, of their due process rights under the Fourteenth Amendment, under color of state law, by their affirmative acts when they arrived at the Tanner home, following Mrs. Tanner's call for help to 911, as set forth below:

a. Defendants Adams and Hunt responded to Plaintiff Deanna Tanner's 911 call for help on behalf of herself, her family and her sister Cynthia Baker, which request included notification that her brother-in-law had come to their premises looking for his wife, who is her sister, and that he is drunk, erratic, making threats and has a gun; their response to the call for help and the statements of the 911 operator that help was on the way led the Plaintiffs to believe that the officers who arrived at the scene would provide help and protection to the Plaintiffs;

b. Upon arriving at the Tanner home, Defendants Adams and Hunt used their vehicle to block the exit of the assailant Keith Baker, who was leaving the Tanner premises when the officers arrived;

c. The 911 officer instructed the Plaintiffs to remain inside the home, thus precluding them from escaping harm at the hands of the assailant Keith Baker.

d. Defendants Adams and Hunt observed the assailant exit his vehicle and pull a semi-automatic weapon from his waistband; they ordered the assailant, Keith Baker, who was armed and dangerous, to stop but did nothing further to enforce their order after the assailant ignored their order;

e. Defendants Adams and Hunt allowed the assailant Keith Baker to enter the home, after having commanded him to stop and show his hands and after having observed him withdraw his right hand from his waistband, holding a black semi-automatic handgun, thus increasing the danger to the Plaintiffs herein by giving the assailant the freedom to shoot, seriously injure and traumatize Plaintiffs;

f. Defendants Adams and Hunt requested permission by radio to enter the Tanner home, which evidences their intent to provide protection after having allowed the assailant to ignore their order to stop and enter the Tanner home, but Defendants Smith and Richardson ordered Defendants Adams and Hunt not to enter the home;

44. These affirmative acts by the individual Defendants were done pursuant to policies and/or procedures of Lenawee County and the Lenawee County Sheriff's Department or in the absence of such policies and/or procedures to guide their activity.

15

45.     These affirmative acts by the foregoing Defendnats created a severe danger to the Plaintiffs herein and/or increased the danger to the Plaintiffs in the following ways:

a.   The Plaintiffs, and each of them, were instructed by the 911 operator to remain inside the home and for Mrs. Tanner to remain on the telephone with the operator, thus preventing them from escaping the home prior to Keith Baker entering the home with his gun drawn and shooting;

b.   By placing the Plaintiff Deanna Tanner in a police vehicle, after she fled the home, and instructing her to remain there, without medical assistance, knowing that she had suffered multiple gunshot wounds;

c.   By preventing Kirk Tanner, who they knew was suffering from multiple gunshot wounds and lay bleeding in his home, from obtaining medical assistance for approximately one and one-half hours, after having been informed that the assailant has killed his wife and himself.

46.     Having created a severe danger and/or increased the danger to the Plaintiffs herein, said Defendants then failed to protect the Plaintiffs.

47.     The foregoing acts of the Defendants, and each of them, amount to deliberate indifference to the substantive due process rights of the Plaintiffs herein to freedom of life and liberty.

48.   The foregoing acts of the Defendants, and each of them, were a proximate cause of the injury and damage to the Plaintiffs, and each of them, as set forth below.

### Count IV

**Liability Of Defendants Lenawee County And Lenawee
County Sheriff's Department Pursuant To
42 U.S.C.A. § 1983, For Deprivation Of The Constitutional**

### Rights Of The Plaintiffs' Substantive Due Process Rights
### Under The Fourteenth Amendment To The U.S. Constitution

49. Plaintiffs reallege and reincorporate by reference each and every allegation set forth in Paragraphs 1 through 48 above, as though fully set forth herein, and further state, in the alternative, the following:

50. 42 U.S.C. § 1983 (1988) provides that every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other persons within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

51. The U. S. Supreme Court has held that a person acts "under color of state law" by using power obtained by virtue of the person's authority under the law. The Court has further defined "person" to include state employees as well as municipalities. The Defendants Lenawee County and Lenawee County Sheriff's Department are municipalities who were acting by virtue of their authority under the law with regard to their establishment of policies and/or procedures for handling situations such as that involved in the instant case, or for their failure to establish such policies and/or procedures where they should have been established; thus said Defendants were acting under color of state law during the events described herein.

52. The Fourteenth Amendment to the U. S. Constitution, § 1, provides that "no state shall...deprive any person of life, liberty, or property, without due process of law...." The U. S. Supreme Court has held that the right to bodily integrity, which

17

includes freedom from physical and emotional injury or loss of life, is a well-recognized liberty interest under the Fourteenth Amendment.

53. Said Defendants deprived the Plaintiffs, and each of them, of their due process rights under the Fourteenth Amendment, under color of state law, in the following ways:

a. By establishing policies and/or procedures which permitted and/or dictated inadequate protections and assistance under the circumstances alleged herein, thereby increasing the danger to the Plaintiffs herein and depriving them of their Fourteenth Amendment substantive due process rights, which includes the right to freedom from bodily harm or injury;

b. By failing to establish policies and/or procedures for handling situations such as those alleged herein, where such policies and/or procedures should have been formulated, thereby increasing the danger to the Plaintiffs herein and depriving them of their Fourteenth Amendment substantive due process rights, which includes the right to freedom from bodily harm or injury;

54. The foregoing affirmative acts by said Defendants created a severe danger to the Plaintiffs herein and/or increased the danger to the Plaintiffs herein under the circumstances as alleged by dictating that the officers act in the way that they did in deliberate indifference to the constitutional rights of the Plaintiffs or by failing to guide and dictate the officers' actions where there were a need to do so, in deliberate indifference to the constitutional rights of the Plaintiffs herein.

55. Having created a severe danger and/or increased the danger to the Plaintiffs herein, said Defendants then failed to protect the Plaintiffs under the circumstances alleged herein.

56. The foregoing acts of the Defendants amount to deliberate indifference to the substantive due process rights of the Plaintiffs herein to freedom of life and liberty.

57.   The foregoing acts of the Defendants were the proximate cause of the injury and damage to the Plaintiffs, and each of them, as set forth below.

### Injuries And Damages

58.   As the direct and proximate result of the foregoing acts and/or omissions of the Defendants, and each of them, as set forth in Counts I through IV above, Plaintiff Deanna Tanner sustained the following injuries and damages, among others:

   a.  Multiple gunshot wounds to her chest;

   b.  Pain and Suffering, past and future;

   c.  Extreme fright, shock and trauma;

   d.  Extreme emotional distress, past and future;

   e.  Permanent injury;

   f.  Permanent scarring and disfigurement;

   g.  Loss of enjoyment of life, past and future;

   h.  Loss of society, companionship and conjugal relationship with her husband;

   i.  Lost wages, past and future;

   j.  All other damages to which she may be entitled under 42 U.S.C. § 1983.

59.   As the direct and proximate result of the foregoing acts and/or omissions of the Defendants, and each of them, as set forth in Counts I and IV above, Plaintiff Kirk Tanner sustained the following injuries and damages, among others:

   a.  Multiple gun shot wounds to his hand, elbow, chest, abdomen and extremities requiring surgery;

   b.  Pain and Suffering, past and future;

   c.  Extreme fright, shock and trauma;

19

    d. Extreme emotional distress, past and future;

    e. Permanent injury and disability;

    f. Permanent scarring and disfigurement;

    g. Loss of enjoyment of life, past and future;

    h. Loss of society, companionship and conjugal relationship with his wife;

    i. Lost wages, past and future;

    j. All other damages to which he may be entitled under 42 U.S.C. § 1983.

60. As the direct and proximate result of the foregoing acts and/or omissions of the Defendants, and each of them, as set forth in Counts I and IV above, Plaintiff Breanne Tanner sustained the following injuries and damages, among others:

    a. A gunshot wound to the left leg and foot;

    b. Pain and Suffering, past and future;

    c. Extreme fright, shock and trauma;

    d. Loss of enjoyment of life, past and future;

    e. Fear for her own safety as well as that as her family;

    f. All other damages to which she may be entitled under 42 U.S.C. § 1983.

61. As the direct and proximate result of the foregoing acts and/or omissions of the Defendants, and each of them, as set forth in Counts I and IV above, Plaintiff Kyler Tanner sustained the following injuries and damages, among others:

    a. Extreme fright, shock and trauma;

    b. Fear for his own safety as well as that of his family;

    c. All other damages to which he may be entitled under 42 U.S.C. § 1983.

20

62.     As the direct and proximate result of the foregoing acts and/or omissions of the Defendants, and each of them, as set forth in Counts I and IV above, Plaintiff Kirk Christopher (KC) Tanner sustained the following injuries and damages, among others:

a.  Extreme fright, shock and trauma;

b.  Fear for his own safety as well as that of his family;

c.  All other damages to which he may be entitled under 42 U.S.C. § 1983.

WHEREFORE, and for all of the foregoing reasons, Plaintiffs request that a judgment be rendered against the above-named Defendants, jointly and severally, in whatever amount that is deemed to be fair and just and in excess of the jurisdictional limits of the Lenawee County Circuit Court, plus costs, interest and attorney fees.

Respectfully submitted,

MAZUR MORGAN MEYERS & KITTEL, PLLC

BY: _____
     Courtney E. Morgan, Jr. (P29137)
     Attorney for Plaintiffs
     660 Woodward, Suite 1490
     Detroit, MI 48226-3592
     (313) 961-0130

DATED: February 26, 2003

21

## DEMAND FOR JURY TRIAL

NOW COME the above-captioned plaintiffs, Kirk Tanner and Deanna Tanner, Individually and as natural guardians and parents of Breanne Tanner, Kirk Christopher (KC) Tanner and Tyler Tanner, by and through their attorneys, MAZUR MORGAN MEYERS & KITTEL, PLLC, and hereby demand a trial by jury in the above-entitled cause of action.

Respectfully submitted,

MAZUR MORGAN MEYERS & KITTEL, PLLC

BY: _____
Courtney E. Morgan, Jr. (P29137)
Attorney for Plaintiffs
660 Woodward, Suite 1490
Detroit, MI 48226-3592
(313) 961-0130

DATED: February 26, 2003

**PROOF OF SERVICE**
The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the Attorneys of record herein at their respective addresses disclosed on the pleadings on
_____2-26_____ 2003

BY: ☑ U.S. Mail   ☐ Fax
☐ Hand Delivered   ☐ UPS
☐ Federal Express   ☐ Other

Signature _____Mary E Murkowski_____

22

ORIGINAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION

KIRK TANNER and DEANNA TANNER,
individually and as natural guardians,
parents and Next Friend of BREANNE
TANNER, CHRISTOPHER TANNER, and
KYLER TANNER,

          Plaintiffs,

vs.

Case No: NANCY G. EDMUNDS
Hon. _____

03-71232

LENAWEE COUNTY SHERIFF'S
DEPARTMENT, a division of the COUNTY
of LENAWEE, a Michigan governmental
agency, COUNTY OF LENAWEE, a
governmental agency, NATHAN ANDREW
ADAMS, CHRISTOPHER JOHN HUNT,
CLETUS B. SMITH and LARRY
RICHARDSON, jointly and severally,

          Defendants.

---

MAZUR MORGAN MEYERS
& KITTEL, P.L.L.C.
Courtney E. Morgan, Jr. (P29137)
Attorney for Plaintiff
660 Woodward, Suite 1490
Detroit, MI 48226
(313) 961-0130

CYNTHIA L. REACH (P55903)
Reach, Ranney & Carpenter, P.C.
Attorneys for Defendants
121 West Washington Street, Suite 400
Ann Arbor, MI 48104
(734) 994-1400 / (734) 994-6615 fax

---

Reach, Ranney
& Carpenter, P.C.
The Earle Building-Suite 400
121 West Washington Street
Ann Arbor, Michigan 48104

Tel: (734) 994-1400
Fax: (734) 994-6615

<u>PROOF OF SERVICE</u>

On the date below I sent by first class mail a copy of a Notice of Removal; Certificate of Service of Notice of Filing for Notice of Removal; and Appearance and Notice of Appearance to:

Honorable Timothy P. Pickard
Lenawee County Circuit Court
Rex B. Martin Judicial Building
425 N. Main Street
Adrian, MI 49221

Courtney E. Morgan, Jr.
660 Woodward, Suite 1490
Detroit, MI 48226

I declare that the statements above are true to the best of my information, knowledge and belief.

Dated: _____3/27/03_____                        *Khristina K. Ortman*

Prepared by:

Cynthia L. Reach (P55903)
REACH, RANNEY & CARPENTER, P.C.
Attorneys for Defendants
121 West Washington Street, Suite 400
Ann Arbor, MI 48104
(734) 994-1400

Reach, Ranney
& Carpenter, P.C.
The Earle Building-Suite 400
121 West Washington Street
Ann Arbor, Michigan 48104

Tel: (734) 994-1400
Fax: (734) 994-6615



ORIGINAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION

JUDGE'S COPY

KIRK TANNER and DEANNA TANNER,
individually and as natural guardians,
parents and Next Friend of BREANNE
TANNER, CHRISTOPHER TANNER, and
KYLER TANNER,

        Plaintiffs,

vs.

LENAWEE COUNTY SHERIFF'S
DEPARTMENT, a division of the COUNTY
of LENAWEE, a Michigan governmental
agency, COUNTY OF LENAWEE, a
governmental agency, NATHAN ANDREW
ADAMS, CHRISTOPHER JOHN HUNT,
CLETUS B. SMITH and LARRY
RICHARDSON, jointly and severally,

        Defendants.

Case No: _____
Hon. _____

NANCY G. EDMUNDS

U.S. DIS
FILED MAR 27 PM

---

MAZUR MORGAN MEYERS
& KITTEL, P.L.L.C.
Courtney E. Morgan, Jr. (P29137)
Attorney for Plaintiff
660 Woodward, Suite 1490
Detroit, MI 48226
(313) 961-0130

CYNTHIA L. REACH (P55903)
Reach, Ranney & Carpenter, P.C.
Attorneys for Defendants
121 West Washington Street, Suite 400
Ann Arbor, MI 48104
(734) 994-1400 / (734) 994-6615 fax

---

Reach, Ranney
& Carpenter, P.C.
The Earle Building–Suite 400
121 West Washington Street
Ann Arbor, Michigan 48104

Tel: (734) 994-1400
Fax: (734) 994-6615

## CERTIFICATE OF SERVICE OF
## NOTICE OF FILING FOR NOTICE OF REMOVAL

    Defendants COUNTY OF LENAWEE, LENAWEE COUNTY SHERIFF'S

DEPARTMENT, NATHAN ADAMS, CHRISTOPHER HUNT, CLETUS SMITH, and

LARRY RICHARDSON by their attorneys, REACH, RANNEY & CARPENTER, P.C.,

certify that they have filed a Notice of Filing of Notice of Removal with the Lenawee County

Circuit Court, and served a copy on Plaintiffs' counsel, indicating that this case has been

1

removed from the Lenawee County Circuit Court to the United States District Court for the Eastern District of Michigan, Southern Division.

A copy of the Notice of Filing of Notice of Removal is attached to this Certificate of Service of Notice of Filing of Notice of Removal.

REACH, RANNEY & CARPENTER, P.C.

Dated: 3/27/03

By: _____
Cynthia L. Reach  (P55903)
Attorneys for Defendants
The Earle Building, Suite 400
121 West Washington Street
Ann Arbor, MI  48104
(313) 994-1400

Reach, Ranney
& Carpenter, P.C.
The Earle Building–Suite 400
121 West Washington Street
Ann Arbor, Michigan 48104

Tel: (734) 994-1400
Fax: (734) 994-6615

2